FILED
DALLAS COUNTY
12/23/2014 2:29:02 PM
GARY FITZSIMMONS
DISTRICT CLERK

Hernandez Angelica

CAUSE NO. _DC-14-14871_____

| | | |
|---|---|---|
| TAMARA LOVERN AND DOUGLAS LOVERN, | § | IN THE DISTRICT COURT |
| Individually and as the Legal Representative | § | |
| of TAMARA LOVERN | § | |
| | § | |
| vs. | § | _____TH JUDICIAL DISTRICT COURT |
| | § | |
| KINDRED HOSPITAL LIMITED PARTNERSHIP | § | |
| d/b/a KINDRED HOSPITAL – DALLAS SAU; | § | |
| RIDGECREST HEALTHCARE AND | § | |
| REHABILITATION CENTER; MESQUITE | § | |
| SPECIALTY HOSPITAL; SOHAIL PAREKH, MD; | § | |
| SOHAIL PAREKH INTERNAL MEDICINE & | § | |
| GERIATRIC CARE, PA | § | DALLAS COUNTY, TEXAS |

### PLAINTIFFS' ORIGINAL PETITION AND REQUEST FOR DISCLOSURE

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW**,** Plaintiffs Tamara Lovern and Douglas Lovern, Individually and as the Legal Representative of Tamara Lovern, and file this Original Petition and Request for Disclosure against Defendants Kindred Hospitals Limited Partnership d/b/a Kindred Hospital – Dallas SAU, Ridgecrest Healthcare and Rehabilitation Center, Mesquite Specialty Hospital, Sohail Parekh, MD, and Sohail Parekh Internal Medicine & Geriatric Care, PA. In support thereof, Plaintiffs would respectfully show the following:

### I.
### DISCOVERY CONTROL PLAN

1.      Plaintiffs request that discovery be conducted under Level 3, TEX. R. CIV. P. 190.4(a).

### II.
### PARTIES

2.      Plaintiff Tamara Lovern ("Mrs. Lovern") is a resident of Kaufman County, Texas.

Exhibit 3

3.      Plaintiff Doug Lovern ("Mr. Lovern") is a patient of Kaufman County, Texas.

4.      Defendant KINDRED HOSPITALS LIMITED PARTNERSHIP d/b/a KINDRED HOSPITAL – DALLAS SAU ("Kindred Hospital") is a Kentucky limited partnership with its principal place of business located at 680 Fourth Street, Louisville, KY 40202. Defendant owns, operates, and/or controls numerous Kindred hospitals, skilled nursing and rehabilitation facilities, and nursing homes in and around Dallas, Texas, including Kindred Hospital - Dallas, located at 9525 Greenville Avenue, Dallas, Texas 75243. This Defendant may be served with process through its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

5.      Defendant NEXION HEALTH AT FORNEY, INC. D/B/A RIDGECREST HEALTHCARE AND REHABILITATION CENTER ("Ridgecrest Healthcare") owns, operates and/or controls Ridgecrest located at 516 Ridgecrest Road, Forney, Texas 75126.   This Defendant may be served with process by delivering a copy of the Citation and Petition to the administrator, Tim Pieman, at 516 Ridgecrest Road, Forney, Texas 75126, or wherever else he may be found.

6.      Defendant MESQUITE SPECIALITY HOSPITAL, LP ("Mesquite Hospital") is a limited partnership which operates Mesquite Specialty Hospital located at 1024 North Galloway Avenue, Mesquite, Texas 75149.   Defendant may be served with process through its registered agent, Corporate Creations Network, Inc., 4265 San Felipe, Suite 1100, Houston, Texas 77027.

7.      Defendant SOHAIL PAREKH INTERNAL MEDICINE & GERIATRIC CARE, PA ("Parekh PA") is a professional association in Dallas County, Texas, which may be served with process through its registered agent, Sohail Parekh, 1601 North Beltline Road, Ste. B, Mesquite, Texas 75149, or wherever he may be found.

8.      Defendant SOHAIL PAREKH, MD ("Dr. Parekh") is a physician in Dallas County, Texas.    He may be served with process at his place of business located at 1601 North Beltline Road, Ste. B, Mesquite, Texas 75149, or wherever he may be found.

**III.**
**JURISDICTION, VENUE, AND CPRC CHAPTER 74**

9.      The subject matter in controversy is within the jurisdictional limits of this Court.

10.      Venue is proper in Dallas County, Texas because all or a substantial part of the events or omissions giving rise to claim occurred in Dallas County.    TEX. CIV. PRAC. & REM. CODE § 15.002.

11.      Plaintiffs' claims are brought in accordance with Chapter 74 of the Civil Practice Remedies Code, the Texas Medical Liability and Insurance Improvement Act.

12.      Plaintiffs gave notice to Defendants of their intention to assert healthcare liability claims arising from the care and treatment provided to Tamara Lovern, in accordance with Chapter 74 of the Civil Practice & Remedies Code; all conditions precedent have been met or satisfied.

13.      Plaintiffs aver that the Damage Limitation provision in Chapter 74 of the Civil Practice & Remedies Code are unconstitutional under the United States Constitution and/or the Constitution of the State of Texas.

14.      This Court has jurisdiction over Defendants as the Defendants are patients of Texas and conduct business in Dallas County, Texas.

15.      Plaintiffs plead, as required to under Rule 47(c)(4) of the Texas Rules of Civil Procedure, that they seek monetary relief over $1,000,000.00.

## IV.
### FACTUAL BACKGROUND

16.     On September 19, 2012, Mrs. Lovern experienced a severe myocardial infarction ("MI") which caused her to also suffer respiratory failure and severe anoxic brain injury following pulmonary arrest.   Mrs. Lovern received emergent treatment for her MI at Dallas Regional Medical Center through October 12, 2012.

17.     On October 12, 2012, Kindred Hospital admitted Mrs. Lovern for continued rehabilitation.   Unfortunately, this was the beginning of a long decline under the care of Kindred Hospital and Sohail Parek, MD, Mrs. Lovern's attending physician. Dr. Parekh evaluated Mrs. Lovern and prepared her history and physical. Dr. Parekh was acutely aware of Mrs. Lovern's medical condition and the development and worsening of her pressure ulcers.

18.      Mrs. Lovern stayed at Kindred Hospital for thirty-eight days.   During this admission, Mrs. Lovern was bedridden, had diminished brain capacity, and required feeding tubes to meet her nutritional needs.    Also during this admission, the staff frequently failed to turn and reposition her every two hours, as required by the standard of care. The records also demonstrate that the air mattress provided to Mrs. Lovern was not always inflated, as it should have been.   As a result, Mrs. Lovern developed sacral and coccyx pressure ulcers shortly after her admission to Kindred Hospital.

19.     Although Kindred Hospital's staff charted that they should pay careful attention to the pressure ulcers, the nursing staff failed to document further development of the pressure ulcers wound from October 21, 2012 onward.    Kindred Hospital's staff also failed to notify Mrs. Lovern's physicians of her worsening pressure ulcers or properly document them in her chart.

20.     Kindred Hospital also failed to implement an appropriate care plan to address Mrs. Lovern's incapacitated state and bedridden condition during her admission.   As a result, she developed horrific pressure ulcers.

21.     During her admission at Kindred Hospital, Ms. Lovern's family and friends complained to staff that that Mrs. Lovern was dirty and smelled and that her bed linens had been soiled.   Family members and friends often cleaned Mrs. Lovern and changed her bed linens. Family and friends also noticed that staff failed to turn and reposition Mrs. Lovern.

22.     On November 19, 2012, Kindred Hospital discharged Mrs. Lovern and she transferred to Ridgecrest.   During her admission at Ridgecrest, Ms. Lovern developed new pressure ulcers and her existing pressure ulcers worsened and became infected. According to Mrs. Lovern's medical records, she experienced fever and sweating that signified worsening of the infection. Despite these presentations, neither Mrs. Lovern's attending physicians nor the nursing staff took any measures to address her worsening condition.

23.     On December 5, 2012, the sacral pressure ulcer was noted to be a Stage IV with drainage, no odor, and exposed bone.   On December 12, 2012, the sacral pressure ulcer worsened and the nursing staff described it as a Stage IV pressure ulcer, draining abscess with yellow/brown purulent foul odor.

24.     On December 13, 2012, Mrs. Lovern transferred to Forest Park Medical Center for excision of the infected Stage IV pressure ulcer, debridement, wound VAC placement followed by flap closure to the coccyx area.   During the procedure, the surgeon also performed a coccygectomy, to remove Mrs. Lovern's tailbone.   He also removed her right

gluteal muscle and fat due to necrosis that had developed in the tissues.   He completed the procedure by placing a wound VAC to the wound.

25.     On December 16, 2012, Mrs. Lovern underwent debridement of the sacral wound down to the bone, wound VAC change, and a bone biopsy.   The surgeon sent specimens to the lab.   The lab results indicated that Mrs. Lovern had a pressure ulcer with acute inflammation and gangrenous stenosis and osteomyelitis.

26.     On December 17, 2012, Mrs. Lovern underwent a third debridement and drainage of the wound followed by a flap closure.   Mrs. Lovern's wound culture grew Citrobacter amalonacticus.    Following these surgical procedures, Mrs. Lovern became severely anemic and required blood transfusions.    Forest Park Medical Center discharged Mrs. Lovern to Mesquite Hospital on December 18, 2012.

27.     On December 18, 2012, Mesquite Hospital admitted Mrs. Lovern.    During her admission to Mesquite Hospital, Mrs. Lovern continued to receive treatment for her pressure ulcers.    During the first two weeks of admission, Mrs. Lovern developed new pressure ulcers, infections in her pressure ulcers, protein malnutrition, contractures in her upper extremities which required splinting, and right basilar vein thrombosis.

28.     On January 7, 2013, Mrs. Lovern developed a UTI, which continued for several weeks.   On January 11, 2013, Mrs. Lovern required surgical debridement, as her sacral pressure ulcer worsened.   On January 21, 2013, Mrs. Lovern underwent flap closure to the sacral pressure ulcer.

29.     Although the staff of Mesquite Hospital charted that they should pay careful attention to the pressure ulcers, the nursing staff failed to adequately document the further

development of the pressure ulcers wound after admission.   Mesquite Hospital's staff also failed to notify Mrs. Lovern's physicians of her worsening pressure ulcers or properly document them in her chart.

30.    Mesquite Hospital also failed to implement an appropriate care plan to address Mrs. Lovern's incapacitated state and bedridden condition during her admission.    As a result, she developed horrific pressure ulcers.

31.    A series of critical errors and omissions by Defendants, by and through their agents, representatives, employees, and medical and nursing staff, led to Mrs. Lovern developing numerous pressure ulcers, infections, complications, and surgical removal of the affected areas.    Despite the multitude of clear signs, actual notice of severe skin breakdowns, and numerous opportunities to employ necessary pressure ulcer prevention measures and treat her pressure ulcers, the Defendants failed to take the appropriate steps to keep Mrs. Lovern safe from injury.

32.    Had Defendants, individually and by and through their respective agents, representatives, employees, and medical and nursing staff properly monitored and evaluated Mrs. Lovern, employed appropriate skin and wound care, treatment, and injury prevention, and monitored Ms. Lovern's medical condition, Mrs. Lovern would not have sustained the injuries and damages described herein.

33.    By reason of the facts set forth above, Defendants were negligent in failing to properly carry out their medical responsibilities to Plaintiffs in accordance with the accepted standards of medical and nursing practice, thereby proximately causing injuries and damages to Plaintiffs.

## V.
### FIRST CAUSE OF ACTION:   MEDICAL NEGLIGENCE OF DEFENDANT KINDRED HOSPITAL

34.     Plaintiffs hereby incorporate and reallege matters as set forth in the preceding paragraphs as if set forth at length.

35.     Defendant Kindred Hospital is a health-care provider licensed by the State of Texas to provide health care.   Defendant Kindred Hospital provided health care to Mrs. Lovern, and at all times relevant there existed a physician-patient relationship between Defendant Kindred Hospital and Mrs. Lovern.

36.     Defendant Kindred Hospital owed Mrs. Lovern a legal duty of care to act as a reasonably prudent health-care provider would act under the same or similar circumstances, including but not limited to exercising that degree of care required by Mrs. Lovern's known physical and mental condition.

37.     At the time and on the occasion in question, Defendant Kindred Hospital, its agents, servants and/or employees, were negligent and grossly negligent in one or more of the following particulars, among others:

      a.  Failing to properly monitor Mrs. Lovern's known physical condition;

      b.  Failing to properly and timely observe, assess, evaluate, and/or treat Mrs. Lovern;

      c.  Failing to exercise reasonable care in protecting its patients such as Mrs. Lovern from injuries;

      d.  Failing to create, implement, and monitor an appropriate care plan that took into consideration Mrs. Lovern's known physical condition and needs;

      e.  Failing to properly observe, assess, evaluate, monitor, and treat Mrs. Lovern with regard to her wounds and pressure ulcers, including but not limited to:

    i.    failing to properly evaluate and asses Mrs. Lovern's risk of skin breakdown and development of pressure ulcers upon admission and thereafter;

    ii.    failing to complete a proper treatment plan to treat Mrs. Lovern's abscess and pressure ulcers and guard against additional pressure ulcers developing;

    iii.    failing to formulate and institute proper policies and procedures for the prevention of pressure ulcers on patients, including but not limited to Mrs. Lovern, and failing to properly train its employees and agents on such proper policies and procedures;

    iv.    failing to properly monitor, evaluate, and treat patients, including but not limited to Mrs. Lovern, to prevent the occurrence of pressure ulcers;

    v.    failing to properly treat Mrs. Lovern's abscesses, pressure ulcers, and skin breakdown;

    vi.    failing to properly monitor, evaluate, treat, and prevent the re-occurrence of pressure ulcers of Mrs. Lovern; and

    vii.    failing to properly implement and put in place appropriate measures, medical devices, plans and procedures to prevent, guard against, and/or lessen the chance of Mrs. Lovern developing additional pressure ulcers and abscesses.

f.    Failing to properly observe, assess, evaluate, monitor, and treat Mrs. Lovern with regard to her infection, including but not limited to:

    i.    failing to properly evaluate and assess Mrs. Lovern's risk of infection and development of infection-related illnesses and conditions, including but not limited to sepsis and osteomyelitis;

    ii.    failing to complete a proper treatment plan to treat Mrs. Lovern's infections and guard against additional infections , sepsis, and osteomyelitis from developing;

    iii.    failing to formulate and institute proper policies and procedures for the prevention of bacterial infections in patients including but not limited to Mrs. Lovern, and failing to properly train its employees and agents on such proper policies and procedures;

iv.   failing to properly monitor, evaluate, and treat Mrs. Lovern to prevent the occurrence of infections, sepsis, and osteomyelitis;

v.   failing to properly treat Mrs. Lovern's infections;

vi.   failing to use various medical devices to treat Mrs. Lovern's infections, to prevent the worsening of Mrs. Lovern's infections, and/or to prevent the formation of additional or new infections in Mrs. Lovern; and

vii.   failing to monitor, evaluate, treat, and prevent the re-occurrence of bacterial infections in Mrs. Lovern.

g.   Failing to properly train, monitor, supervise, and oversee its employees, agents, and staff in the following respects, among others;

i.   how to properly assess the risk of skin breakdown in patients, the risk of development of pressure ulcers, and/or the reoccurrence of pressure ulcers;

ii.   how to create and implement a proper care plan for patients to prevent and guard against the development of pressure ulcers, the treatment of existing pressure ulcers, and/or prevent the recurrence of pressure ulcers;

iii.   how to create and implement a proper care plan for patients to have and guard against the development of various bacterial infections, including but not limited to sepsis and osteomyelitis;

iv.   how to guard against, prevent, and lessen the chances of development and re-occurrence of pressure ulcers and bacterial infections in patients;

v.   how to properly monitor patients with known physical limitations and/or increased risk of development of pressure ulcers and/or bacterial infections to reduce the chances of such injuries occurring; and

vi.   how to properly staff its facility to ensure that adequate staff existed to attend to the needs of patients at an increase risk of developing pressure ulcers and/or bacterial infections.

h.   Failing to formulate and institute proper policies and procedures for the care and treatment of patients such as Mrs. Lovern with known medical

conditions, and failing to train its employees and agents on such proper policies and procedures;

i.   Failing to exercise reasonable care in the selection and maintenance of its medical and nursing staff;

j.   Failing to properly supervise its employees, agents, and staff; and

k.   Failing to ensure that appropriate levels of staffing and training of staff were provided for the care and treatment of patients, including Mrs. Lovern, and that sufficient funds were budgeted and expended on staff, training of staff, medical supplies, and medical care and treatment of Mrs. Lovern.

38.   As outlined above, Defendant Kindred Hospital failed to meet the applicable standard of care that it owed to Mrs. Lovern, and this failure was a proximate cause of severe damages suffered by Plaintiffs.

## VI.
### SECOND CAUSE OF ACTION:   MEDICAL NEGLIGENCE OF DEFENDANT DR. PAREKH AND DEFENDANT PAREKH, PA

39.   Plaintiffs hereby incorporate and reallege matters as set forth in the preceding paragraphs as if set forth at length.

40.   Defendant Dr. Parekh is a healthcare provider licensed by the State of Texas to provide healthcare.   At all times relevant, Defendant Dr. Parekh was a physician practicing medicine in the State of Texas.   At all times relevant to the acts and omissions described herein, there existed a physician-patient relationship between Defendant Dr. Parekh and Mrs. Lovern.

41.   Defendant Parekh PA is a health-care provider licensed by the State of Texas to provide health care.   Defendant Parekh PA provided health care to Mrs. Lovern, and at all times relevant there existed a physician-patient relationship between Defendant Parekh PA and Mrs. Lovern.

42.     Defendant Parekh PA and Defendant Parekh MD owed Mrs. Lovern a legal duty of care to act as a reasonably prudent health-care provider would act under the same or similar circumstances, including but not limited to exercising that degree of care required by Mrs. Lovern's known physical and mental condition.

43.     In treating Mrs. Lovern, Defendant Dr. Parekh and Defendant Parekh PA did not possess and comply with reasonable care, and Defendant Dr. Parekh's and Defendant Parekh PA's medical care and treatment of Mrs. Lovern fell below the applicable standard of care.   As such, Defendant Dr. Parekh and Defendant Parekh PA breached his duty of care to Mrs. Lovern.

44.     At the time and on the occasion in question, Defendant Dr. Parekh and Defendant Parekh PA were negligent and grossly negligent in one or more of the following particulars, among others:

a.  Failing to properly monitor Mrs. Lovern's known physical and medical condition;

b.  Failing to properly and timely observe, assess, evaluate, and/or treat Mrs. Lovern;

c.  Failing to exercise reasonable care in protecting his patients such as Mrs. Lovern from injuries;

d.  Failing to create, implement, and monitor an appropriate care plan that took into consideration Mrs. Lovern's known physical condition and needs;

e.  Failing to properly observe, assess, evaluate, monitor, and treat Mrs. Lovern with regard to her wounds and pressure ulcers, including but not limited to:

i.   failing to properly evaluate and asses Mrs. Lovern's risk of skin breakdown and development of pressure ulcers upon admission and thereafter;

ii.  failing to complete a proper treatment plan to treat Mrs. Lovern's abscess and pressure ulcers and guard against additional pressure ulcers developing;

iii.    failing to formulate and institute proper policies and procedures for the prevention of pressure ulcers on patients, including but not limited to Mrs. Lovern, and failing to properly train its employees and agents on such proper policies and procedures;

iv.    failing to properly monitor, evaluate, and treat patients, including but not limited to Mrs. Lovern, to prevent the occurrence of pressure ulcers;

v.    failing to properly treat Mrs. Lovern's abscesses, pressure ulcers, and skin breakdown;

vi.    failing to properly monitor, evaluate, treat, and prevent the re-occurrence of pressure ulcers of Mrs. Lovern; and

vii.    failing to properly implement and put in place appropriate measures, medical devices, plans and procedures to prevent, guard against, and/or lessen the chance of Mrs. Lovern developing additional pressure ulcers and abscesses.

f.    Failing to ensure that appropriate levels of staffing and training of staff were provided for the care and treatment of Mrs. Lovern;

g.    Failing to ensure that appropriate levels of staffing and training of staff were provided for the care and treatment of Mrs. Lovern; and

h.    Was otherwise negligent in his care and treatment of Mrs. Lovern.

45.    As outlined above, Defendant Dr. Parekh failed to meet the applicable standards of care that Defendant owed to Mrs. Lovern, and this failure was a proximate cause of the severe damages suffered by Plaintiffs.

**VII.**
**THIRD CAUSE OF ACTION:  MEDICAL NEGLIGENCE OF DEFENDANT RIDGECREST HEALTHCARE**

46.    Plaintiffs hereby incorporate and reallege matters as set forth in the preceding paragraphs as if set forth at length.

47.     Defendant Ridgecrest Healthcare is a health-care provider licensed by the State of Texas to provide health care.   Defendant Ridgecrest Healthcare provided health care to Mrs. Lovern, and at all times relevant there existed a physician-patient relationship between Defendant Ridgecrest Healthcare and Mrs. Lovern.

48.     Defendant Ridgecrest Healthcare owed Mrs. Lovern a legal duty of care to act as a reasonably prudent health-care provider would act under the same or similar circumstances, including but not limited to exercising that degree of care required by Mrs. Lovern's known physical and mental condition.

49.     At the time and on the occasion in question, Defendant Ridgecrest Healthcare, its agents, servants and/or employees, were negligent and grossly negligent in one or more of the following particulars, among others:

   a.   Failing to properly monitor Mrs. Lovern's known physical condition;

   b.   Failing to properly and timely observe, assess, evaluate, and/or treat Mrs. Lovern;

   c.   Failing to exercise reasonable care in protecting its patients such as Mrs. Lovern from injuries;

   d.   Failing to create, implement, and monitor an appropriate care plan that took into consideration Mrs. Lovern's known physical condition and needs;

   e.   Failing to properly observe, assess, evaluate, monitor, and treat Mrs. Lovern with regard to her wounds and pressure ulcers, including but not limited to:

      i.    failing to properly evaluate and asses Mrs. Lovern's risk of skin breakdown and development of pressure ulcers upon admission and thereafter;

      ii.   failing to complete a proper treatment plan to treat Mrs. Lovern's abscess and pressure ulcers and guard against additional pressure ulcers developing;

iii.  failing to formulate and institute proper policies and procedures for the prevention of pressure ulcers on patients, including but not limited to Mrs. Lovern, and failing to properly train its employees and agents on such proper policies and procedures;

iv.  failing to properly monitor, evaluate, and treat patients, including but not limited to Mrs. Lovern, to prevent the occurrence of pressure ulcers;

v.  failing to properly treat Mrs. Lovern's abscesses, pressure ulcers, and skin breakdown;

vi.  failing to properly monitor, evaluate, treat, and prevent the re-occurrence of pressure ulcers of Mrs. Lovern; and

vii.  failing to properly implement and put in place appropriate measures, medical devices, plans and procedures to prevent, guard against, and/or lessen the chance of Mrs. Lovern developing additional pressure ulcers and abscesses.

f.  Failing to properly observe, assess, evaluate, monitor, and treat Mrs. Lovern with regard to her infection, including but not limited to:

i.  failing to properly evaluate and assess Mrs. Lovern's risk of infection and development of infection-related illnesses and conditions, including but not limited to sepsis and osteomyelitis;

ii.  failing to complete a proper treatment plan to treat Mrs. Lovern's infections and guard against additional infections, sepsis, and osteomyelitis from developing;

iii.  failing to formulate and institute proper policies and procedures for the prevention of bacterial infections in patients including but not limited to Mrs. Lovern, and failing to properly train its employees and agents on such proper policies and procedures;

iv.  failing to properly monitor, evaluate, and treat Mrs. Lovern to prevent the occurrence of infections, sepsis, and osteomyelitis;

v.  failing to properly treat Mrs. Lovern's infections;

vi.  failing to use various medical devices to treat Mrs. Lovern's infections, to prevent the worsening of Mrs. Lovern's infections, and/or to prevent the formation of additional or new infections in Mrs. Lovern; and

      vii.    failing to monitor, evaluate, treat, and prevent the re-occurrence of bacterial infections in Mrs. Lovern.

  g.  Failing to properly train, monitor, supervise, and oversee its employees, agents, and staff in the following respects, among others;

      i.    how to properly assess the risk of skin breakdown in patients, the risk of development of pressure ulcers, and/or the reoccurrence of pressure ulcers;

      ii.    how to create and implement a proper care plan for patients to prevent and guard against the development of pressure ulcers, the treatment of existing pressure ulcers, and/or prevent the recurrence of pressure ulcers;

      iii.    how to create and implement a proper care plan for patients to have and guard against the development of various bacterial infections, including but not limited to sepsis and osteomyelitis;

      iv.    how to guard against, prevent, and lessen the chances of development and re-occurrence of pressure ulcers and bacterial infections in patients;

      v.    how to properly monitor patients with known physical limitations and/or increased risk of development of pressure ulcers and/or bacterial infections to reduce the chances of such injuries occurring; and

      vi.    how to properly staff its facility to ensure that adequate staff existed to attend to the needs of patients at an increase risk of developing pressure ulcers and/or bacterial infections.

  h.  Failing to formulate and institute proper policies and procedures for the care and treatment of patients such as Mrs. Lovern with known medical conditions, and failing to train its employees and agents on such proper policies and procedures;

  i.  Failing to exercise reasonable care in the selection and maintenance of its medical and nursing staff;

  j.  Failing to properly supervise its employees, agents, and staff; and

     k.   Failing to ensure that appropriate levels of staffing and training of staff were provided for the care and treatment of patients, including Mrs. Lovern, and that sufficient funds were budgeted and expended on staff, training of staff, medical supplies, and medical care and treatment of Mrs. Lovern.

50.    As outlined above, Defendant Ridgecrest Healthcare failed to meet the applicable standard of care that it owed to Mrs. Lovern, and this failure was a proximate cause of severe damages suffered by Plaintiffs.

**VIII.**

**FOURTH CAUSE OF ACTION:  NEGLIGENCE OF DEFENDANT MESQUITE HOSPITAL**

51.    Plaintiffs hereby incorporate and reallege matters as set forth in the preceding paragraphs as if set forth at length.

52.    Defendant Mesquite Hospital is a health-care provider licensed by the State of Texas to provide health care.   Defendant Mesquite Hospital provided health care to Mrs. Lovern, and at all times relevant there existed a physician-patient relationship between Defendant Mesquite Hospital and Mrs. Lovern.

53.    Defendant Mesquite Hospital owed Mrs. Lovern a legal duty of care to act as a reasonably prudent health-care provider would act under the same or similar circumstances, including but not limited to exercising that degree of care required by Mrs. Lovern's known physical and mental condition.

54.    At the time and on the occasion in question, Defendant Mesquite Hospital, its agents, servants and/or employees, were negligent and grossly negligent in one or more of the following particulars, among others:

     a.   Failing to properly monitor Mrs. Lovern's known physical condition;

     b.   Failing to properly and timely observe, assess, evaluate, and/or treat Mrs. Lovern;

c.  Failing to exercise reasonable care in protecting its patients such as Mrs. Lovern from injuries;

d.  Failing to create, implement, and monitor an appropriate care plan that took into consideration Mrs. Lovern's known physical condition and needs;

e.  Failing to properly observe, assess, evaluate, monitor, and treat Mrs. Lovern with regard to her wounds and pressure ulcers, including but not limited to:

    i.    failing to properly evaluate and asses Mrs. Lovern's risk of skin breakdown and development of pressure ulcers upon admission and thereafter;

    ii.   failing to complete a proper treatment plan to treat Mrs. Lovern's abscess and pressure ulcers and guard against additional pressure ulcers developing;

    iii.  failing to formulate and institute proper policies and procedures for the prevention of pressure ulcers on patients, including but not limited to Mrs. Lovern, and failing to properly train its employees and agents on such proper policies and procedures;

    iv.   failing to properly monitor, evaluate, and treat patients, including but not limited to Mrs. Lovern, to prevent the occurrence of pressure ulcers;

    v.    failing to properly treat Mrs. Lovern's abscesses, pressure ulcers, and skin breakdown;

    vi.   failing to properly monitor, evaluate, treat, and prevent the re-occurrence of pressure ulcers of Mrs. Lovern; and

    vii.  failing to properly implement and put in place appropriate measures, medical devices, plans and procedures to prevent, guard against, and/or lessen the chance of Mrs. Lovern developing additional pressure ulcers and abscesses.

f.  Failing to properly observe, assess, evaluate, monitor, and treat Mrs. Lovern with regard to her infection, including but not limited to:

    i.    failing to properly evaluate and assess Mrs. Lovern's risk of infection and development of infection-related illnesses and conditions, including but not limited to sepsis and osteomyelitis;

    ii.    failing to complete a proper treatment plan to treat Mrs. Lovern's infections and guard against additional infections , sepsis, and osteomyelitis from developing;

    iii.    failing to formulate and institute proper policies and procedures for the prevention of bacterial infections in patients including but not limited to Mrs. Lovern, and failing to properly train its employees and agents on such proper policies and procedures;

    iv.    failing to properly monitor, evaluate, and treat Mrs. Lovern to prevent the occurrence of infections, sepsis, and osteomyelitis;

    v.    failing to properly treat Mrs. Lovern's infections;

    vi.    failing to use various medical devices to treat Mrs. Lovern's infections, to prevent the worsening of Mrs. Lovern's infections, and/or to prevent the formation of additional or new infections in Mrs. Lovern; and

    vii.    failing to monitor, evaluate, treat, and prevent the re-occurrence of bacterial infections in Mrs. Lovern.

g.  Failing to properly train, monitor, supervise, and oversee its employees, agents, and staff in the following respects, among others;

    i.    how to properly assess the risk of skin breakdown in patients, the risk of development of pressure ulcers, and/or the reoccurrence of pressure ulcers;

    ii.    how to create and implement a proper care plan for patients to prevent and guard against the development of pressure ulcers, the treatment of existing pressure ulcers, and/or prevent the recurrence of pressure ulcers;

    iii.    how to create and implement a proper care plan for patients to have and guard against the development of various bacterial infections, including but not limited to sepsis and osteomyelitis;

    iv.    how to guard against, prevent, and lessen the chances of development and re-occurrence of pressure ulcers and bacterial infections in patients;

    v.    how to properly monitor patients with known physical limitations and/or increased risk of development of pressure ulcers and/or

bacterial infections to reduce the chances of such injuries occurring; and

vi.   how to properly staff its facility to ensure that adequate staff existed to attend to the needs of patients at an increase risk of developing pressure ulcers and/or bacterial infections.

h.   Failing to formulate and institute proper policies and procedures for the care and treatment of patients such as Mrs. Lovern with known medical conditions, and failing to train its employees and agents on such proper policies and procedures;

i.   Failing to exercise reasonable care in the selection and maintenance of its medical and nursing staff;

j.   Failing to properly supervise its employees, agents, and staff; and

k.   Failing to ensure that appropriate levels of staffing and training of staff were provided for the care and treatment of patients, including Mrs. Lovern, and that sufficient funds were budgeted and expended on staff, training of staff, medical supplies, and medical care and treatment of Mrs. Lovern.

55.   As outlined above, Defendant Mesquite Hospital failed to meet the applicable standard of care that it owed to Mrs. Lovern, and this failure was a proximate cause of severe damages suffered by Plaintiffs.

## IX.
### FIFTH CAUSE OF ACTION:   LIABILITY UNDER THE MEDICARE SECOND PAYER PROVISIONS

56.   Plaintiffs hereby incorporate and reallege matters as set forth in the preceding paragraphs as if set forth at length.

57.   The Medicare Second Payer ("MSP") provisions of Subchapter 18 of the Social Security Act 42 U.S.C. § 1395y(b)(3)(A) provides for a private cause of action for damages to recover payments that Medicare has made on behalf of a beneficiary.   Mrs. Lovern was a Medicare beneficiary.   Mrs. Lovern incurred certain medical expenses related to the medical treatment necessary for pressure ulcers and their sequelae that she sustained while under

Defendants' medical care. Medicare authorized the medical treatment necessary for Mrs. Lovern's wound care, debridement, wound VAC, infections, and surgeries.   Pursuant to the 42 U.S.C. § 1395y(b)(3)(A), Medicare encourages a party, such as Mrs. Lovern, to pursue a private cause of action to recover payments that Medicare has made on behalf of a beneficiary.

58.     As a result of the conduct described herein, Defendants are required and responsible to make payment for the health care costs of Medicare beneficiaries that were caused by Defendants' tortious and unlawful conduct, which costs have been and will be unlawfully shifted to the United States vis-à-vis the Medicare Program.

## X.
### SIXTH CAUSE OF ACTION–INJURY TO A DISABLED PERSON

59.     Plaintiffs hereby incorporate and reallege matters as set forth in the preceding paragraphs as if set forth at length.

60.     Plaintiffs would further show that Defendants knowingly caused (1) serious bodily injury; (2) serious mental deficiency, impairment, or injury; and/or (3) bodily injury to Mrs. Lovern, who was a disabled individual, as per Section 22.04 of the Texas Penal Code, thereby eliminating any limitation on the amount of recovery of exemplary damages established by Section 41.008(b) of the Texas Civil Practice and Remedies Code.

61.     As a result of the violation of the minimum standards set forth above of Defendants' agents, servants, officers, directors, and employees, Mrs. Lovern was caused to sustain serious personal injuries, and endure physical pain and mental anguish, and subsequently die.

## XI.
### VICARIOUS LIABILITY

62.     Plaintiffs hereby incorporate and reallege the matters set forth in the preceding paragraphs as if set forth at length.

63.     Defendants Kindred Hospital, Ridgecrest Healthcare, Mesquite Specialty Hospital and Parekh PA employed, trained, supervised, and/or monitored various medical and nursing staff that provided medical care and treatment to Mrs. Lovern while a patient of these facilities and practices.

64.     In addition, Defendant Dr. Parekh also supervised and/or monitored various medical and nursing staff that provided medical care and treatment to Mrs. Lovern while she was a patient in at various medical facilities and practices.

65.     Defendants are each responsible for the acts and/or omissions of their respective agents, ostensible agents, servants, employees, contractors, and representatives during the care and treatment of Mrs. Lovern under various theories of vicarious liability, including but not limited to the doctrines of actual authority, apparent authority, *respondeat superior,* and ratification.

66.     ***Respondeat Superior*** – At all relevant times, Defendants' respective agents, ostensible agents, servants, employees, contractors, and representatives who rendered care and treatment to Mrs. Lovern were acting within the course and scope of their employment and/or agency with Defendants, in furtherance of Defendants' business, and for the accomplishment of the object for which they were hired and/or employed.   Mrs. Lovern was injured as the result of medical negligence committed by Defendants' respective agents, ostensible agents, servants, employees, contractors, and representatives.

67.    *Actual Authority* – At all relevant times, Defendants intentionally conferred authority on their agents, intentionally allowed their agents to believe they had the proper authority, or through the lack of care, allowed their agents to believe they had the property authority, to act on Defendants' behalf in the care and treatment of Mrs. Lovern.    Mrs. Lovern was injured as the result of medical committed by Defendants' respective agents, ostensible agents, servants, employees, contractors, and representatives.

68.    *Apparent Authority* – At all relevant times, Defendants affirmatively held out their respective agents, employees, and representatives who rendered care and treatment to Mrs. Lovern as having authority to act on their behalf, knowingly permitted their respective agents, ostensible agents, servants, employees, contractors, and representatives to hold themselves out as having proper authority, or acted with such lack of ordinary care as to clothe their respective agents, ostensible agents, servants, employees, contractors, and representatives with the indicia of authority.    Defendants' conduct caused Plaintiffs to believe that Defendants' respective agents, ostensible agents, servants, employees, contractors, and representatives had the authority to act on Defendants' behalf, and Plaintiffs justifiably relied upon the authority of Defendants' respective agents, ostensible agents, servants, employees, contractors, and representatives.

69.    *Agency by Estoppel* – Plaintiffs would also show that at all relevant times, there existed an agency by estoppel relationship between Defendant Kindred Hospital and Defendant Parekh PA and those persons who undertook to treat Mrs. Lovern, including but not limited to Dr. Parekh, as a result of which, Defendants are estopped to deny that said agency relationship.

70.     Plaintiffs would also show that at all relevant times, there existed an agency by estoppel relationship between Defendant Kindred Hospital, Defendant Ridgecrest, Defendant Mesquite Hospital, and Defendant Parekh PA and those persons who undertook to treat Mrs. Lovern, as a result of which, Defendants are estopped to deny that said agency relationship.

71.     *Ratification* – Defendants are also vicariously liable for the acts and/or omissions of their respective agents, ostensible agents, servants, employees, contractors, and representatives acting outside the scope of their authority because Mrs. Lovern was injured by Defendants agents and non-agents who provided medical treatment to Mrs. Lovern. Defendants' agents and/or non-agents engaged in improper acts and/or omissions on behalf of Defendants, Defendants approved these acts and omissions by word, act, or conduct after acquiring fully knowledge of the alleged acts and/or omissions, and Defendants gave approval with the intention of giving validity to the acts and/or omissions of their agents, employees, and representatives.

**XII.**
**NONDELEGABLE DUTY**

72.     By virtue of the relationship between Plaintiffs and Defendants, Defendants owed Plaintiffs, and specifically to Mrs. Lovern, and independent non-delegable duty to exercise reasonable care in assuring that the health-care personnel selected by Defendants were competent to perform the tasks assigned them, and to otherwise refrain from subjecting patients to harm and injury by health-care personnel.   The personnel who undertook to treat Mrs. Lovern failed to act in accordance with current standards of medical practice, and otherwise failed to possess an adequate level of skill, knowledge, and training to undertake to render treatment to persons such as Mrs. Lovern.   These persons also lacked the training,

knowledge and skill to enable them to refrain from inflicting injuries upon patients such as Mrs. Lovern.

## XIII.
### MISNOMER, ALTER-EGO, & ASSUMED NAME

73.     In the event any parties are misnamed or not included herein, such event was a "misnomer," or such parties are or were "alter-egos" of parties named herein

74.     "Sohail Parekh Internal Medicine & Geriatric Care, PA" is an assumed name business operating in Dallas County, Texas.   As such, Plaintiffs bring this cause of action, in part, against Sohail Parekh, MD and his assumed name and relies upon arts. 6133 *et. seq.*, TEX. REV. CIV. STAT., and Rule 28, Tex. R. Civ. P., in order to properly identify the Defendant herein

## XIV.
### GROSS NEGLIGENCE

75.     Plaintiff further believes that the acts of the Defendants constitute gross negligence.   The acts or omissions, when viewed objectively from the Defendants' standpoint at the time it occurred, involved an extreme degree of risk considering the probability and magnitude of the potential harm to others; and the Defendants had actual, subjective awareness of the risk.

## XV.
### PROXIMATE CAUSE

76.     Defendants, by and through their respective agents, ostensible agents, servants, employees, contractors, and representatives, who were acting within the course and scope of their employment, were negligent in failing to properly carry out their medical responsibilities to Plaintiffs in accordance with the accepted standards of medical and nursing practice, thereby proximately causing injuries and damages to Plaintiffs.

77.     As a proximate result of the conduct, negligence and gross negligence as described above, Plaintiffs seek recovery of damages which are <u>far</u> in excess of the minimum jurisdictional limits of this Court and in an amount determined to be fair and just by a jury.

**XVI.**
**<u>DAMAGES</u>**

78.     As a direct and proximate result of the negligent acts and/or omissions of the Defendants, Plaintiffs suffered the following injuries and damages:

    a.  Physical pain and mental anguish in the past;

    b.  Physical pain and mental anguish in the future;

    c.  Loss of earning capacity in the past;

    d.  Loss of earning capacity in the future;

    e.  Disfigurement in the past;

    f.  Disfigurement in the future;

    g.  Physical impairment in the past;

    h.  Physical impairment in the future;

    i.  Medical care expenses in the past;

    j.  Medical care expenses in the future;

    k.  Loss of consortium in the past;

    l.  Loss of consortium in the future;

    m.  Punitive and exemplary damages;

    n.  Pre-judgment interest;

    o.  Post-judgment interest; and

    p.  Costs of court.

## XVII.
### EXEMPLARY DAMAGES

79.     Plaintiffs hereby incorporate and reallege matters set forth in the preceding paragraphs as if set forth at length.

80.     As outlined above, Defendants' acts and omissions constitute conscious disregard for the safety and welfare of patients, including Mrs. Lovern.   With actual notice of Mrs. Lovern's physical condition and medical needs, Defendants failed to exercise the basic level of proper care, failed to ensure that adequate and properly trained staff treated and monitored Mrs. Lovern, and failed to ensure that sufficient funds were allocated and expended on staffing and care of patients such as Mrs. Lovern.   Defendants' conscious disregard for patients and their decision to place profits over their patients resulted in severe injuries to Plaintiffs.

## XVII.
### REQUESTS FOR RULE 194 DISCLOSURES

81.     Plaintiffs request that Defendants disclose to Plaintiffs, within fifty (50) days of service of this request, the information and materials described in Rule 194.2 of the Texas Rules of Civil Procedure.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs pray that Defendants be cited to appear and answer herein; and that upon final determination of this cause of action, Plaintiffs receive judgment against Defendants, jointly and severely, for actual damages, punitive damages, costs of court, prejudgment and post-judgment interest and for such any further relief to which Plaintiffs may be justly entitled.

Respectfully submitted,

**THE MARTINI LAW FIRM, PC**

By:_____

Tanja Martini
State Bar No. 24032581
2619 Hibernia
Dallas, TX 75204
Telephone:    214-273-7283
Facsimile:      888.248.1734
E-Mail:    tanja@themartinilawfirm.com

**CO-COUNSEL FOR PLAINTIFFS**

and

**VAN WEY LAW, PLLC**

Kay L. Van Wey
State Bar No. 20461950
12720 Hillcrest Road
Suite 725
Dallas, TX 75230
Telephone:    214-329-1350
Facsimile:      800-582-1042
E-Mail:      kay@vanweylaw.com

**CO -COUNSEL FOR PLAINTIFFS**